IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 14-cv-03321-CBS

SHARON L. NAVARRO,
    Plaintiff,
v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,
    Defendant.

---

MEMORANDUM OPINION AND ORDER

---

This civil action comes before the court pursuant to Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-33, for review of the Commissioner of Social Security's final decision denying Ms. Navarro's application for Social Security Disability Income ("SSDI") benefits.[1] Pursuant to the Order Referring Case dated July 14, 2015, this civil action was referred to the Magistrate Judge "for all purposes" pursuant to Title 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2(e). (*See* Doc. # 20). The court has reviewed the Complaint, Defendant's Answer, Plaintiff's Opening Brief, Defendant's Response Brief, Plaintiff's Reply Brief, the administrative record, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.    Procedural History

Ms. Navarro filed an application for SSDI benefits on November 12, 2008. (*See* Administrative Record ("Tr.") (Doc. # 7) at 70, 179-85). She claimed that she became disabled on August 1, 2004. (Tr. 179). Her claim was denied on June 1, 2009 and she requested a

---

[1] SSDI pays benefits to people with disabilities who have worked and paid Social Security taxes on their earnings. Benefits payable under Title II (SSDI) are based on earnings history. Regulations for Title II are found at 20 C.F.R. §404.

hearing before an Administrative Law Judge ("ALJ").  (Tr. 70-71, 75-77, 82-83).  ALJ William Musseman held a hearing on October 27, 2010.  (Tr. 27-50).  Ms. Navarro was represented by counsel appointed on August 16, 2010 and testified at the hearing.  (Tr. 31-42, 146).  Ms. Bonnie Martindale testified at the hearing as a Vocational Expert ("VE").  (Tr. 44-50, 173-74).  The ALJ issued his written decision on December 10, 2010, concluding that Ms. Navarro was not disabled within the meaning of the Act.  (Tr. 8-21).  Ms. Navarro sought review of the ALJ's decision.  (Tr. 178).  The Appeals Council received additional evidence from Ms. Navarro and denied her request for review on October 28, 2011.  (Tr. 1-5, 555-559).  Ms. Navarro filed Civil Action No. 11-cv-3355-MSK on December 22, 2011.  (Tr. 561-62).  The District Court remanded "for further proceedings at Step 2, and if appropriate, Steps 3, 4, and 5."  (Tr. 571).

Following remand, ALJ Musseman held a hearing on December 2, 2013.  (Tr. 575, 520-535).  Ms. Navarro was represented by counsel and testified at the hearing.  (Tr. 522-535).  On March 3, 2014, the ALJ issued his written decision that Ms. Navarro was not disabled within the meaning of the Act.  (Tr. 503-518).  Ms. Navarro sought review of the ALJ's decision.  (Tr. 497-501).  On November 4, 2014, the Appeals Council "found no reason . . . to assume jurisdiction."  (Tr. 492-94).  Ms. Navarro filed this civil action on December 8, 2014.  (*See* Doc. # 1).  The court has jurisdiction to review the final decision of the Commissioner.  42 U.S.C. § 405(g).

II.     Standard of Review

In reviewing the Commissioner's final decision, the court must "closely examine the record as a whole to determine whether the . . . decision is supported by substantial evidence and adheres to applicable legal standards."  *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (internal quotation marks and citation omitted).  *See also Williams v. Bowen*, 844 F.2d 748, 750

2

(10th Cir. 1988) (court "must determine whether the . . . decision of nondisability, . . . is supported by substantial evidence, *i.e.*, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal quotation marks and citation omitted). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court "must affirm . . . if the decision is supported by substantial evidence." *Eggleston v. Bowen*, 851 F.2d 1244, 1246 (10th Cir. 1988) (citing 42 U.S.C. § 405(g)). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988). The court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Massanari*, 271 F.3d 1256, 1260 (10th Cir. 2001), *as amended on denial of reh'g,* 287 F.3d 903 (10th Cir. 2002). *See also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.") (internal quotation marks and citation omitted); *Mounts v. Astrue*, No. 11-1172, 479 F. App'x 860, 867 (10th Cir. May 9, 2012) (court cannot reweigh the evidence and come to a different conclusion than the ALJ) (citation omitted).

III.   Analysis

An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); § 1382c(a)(3)(B). The Commissioner has developed a five-step evaluation process for

3

determining whether a claimant is disabled under the Act.  See *Williams*, 844 F.2d at 750-52 (describing the five steps in detail).  "The claimant bears the burden of proof through step four of the analysis."  *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).  "If a determination can be made at any of the steps that a claimant is not disabled, evaluation under a subsequent step is not necessary."  *Williams*, 844 F.2d at 750.  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and whether the severity of her impairments meets or equals the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  *Id.* at 750–51.

If plaintiff's impairment does not meet or equal a listed impairment, the evaluation proceeds to step four, where the Commissioner assesses a claimant's Residual Functional Capacity (RFC), 20 C.F.R. §§ 404.1520(e), 416.920(e), and the claimant must establish that he does not retain the RFC to perform his past relevant work.  *Pipkins v. Colvin*, No. CIV-14-136-RAW-KEW, 2015 WL 3618281, at *1, n. 1 (E.D. Okla. June 9, 2015).  The RFC is what a claimant is still "functionally capable of doing on a regular and continuing basis, despite his impairments; the claimant's maximum sustained work capability."  *Williams*, 844 F.2d at 751.  At step four of the five-step analysis, "a claimant's RFC is measured against the physical and mental demands of the claimant's past relevant work to determine whether the claimant can resume such work."  *Barnes v. Colvin*, No. 14-1341, 2015 WL 3775669, at *2 (10th Cir. June 18, 2015) (internal quotation marks omitted) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir.1996) (noting that the step-four analysis includes three phases: (1) "evaluat[ing] a claimant's physical and mental [RFC]"; (2) "determin[ing] the physical and mental demands of the claimant's past relevant work"; and (3) ascertaining "whether the claimant has the ability to meet the job demands found in phase two despite the [RFC] found in phase one.")).

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five the existence of a significant number of jobs in the national economy that a claimant can perform given his RFC, age, education, and work experience. *Neilson*, 992 F.2d at 1120.

> . . . The decision maker first determines the type of work, based on physical exertion (strength) requirements, that the claimant has the RFC to perform. In this context, work existing in the economy is classified as sedentary, light, medium, heavy, and very heavy. To determine the claimant's "RFC category," the decision maker assesses a claimant's physical abilities and, consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work). . . .
>
> If a conclusion of "not disabled" results, this means that a significant number of jobs exist in the national economy for which the claimant is still exertionally capable of performing. . . .

*Williams*, 844 F.2d at 751-52. (citations omitted). The Commissioner can meet the burden of showing that there is other work in significant numbers in the national economy that claimant can perform by the testimony of a vocational expert. *Tackett v. Apfel*, 180 F.3d 1094, 1098–1099, 1101 (9th Cir.1999). "Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work." *Pipkins v. Colvin*, 2015 WL 3618281, at *1, n.1.

Ms. Navarro was 47 years old at the time she applied for disability benefits and thus considered a "younger individual." (*See* 20 C.F.R. § 404.1563, Tr. 70, 179). She is married. (Tr. 38, 180, 213). She has a Bachelor's degree in sociology and business communications. (Tr. 46, 221, 401, 413). Her past work includes case manager for developmentally disabled adults, drug and alcohol counselor for juveniles, insurance agent, and jewelry sales, among other things. (Tr. 202-211, 215). She has not worked since August 1, 2004. (Tr. 179).

The ALJ determined that Ms. Navarro: (1) met the insured status requirements of the Act through December 31, 2009, the last date that she was insured, (2) had not engaged in substantial gainful activity from the alleged onset date of disability, August 1, 2004, through the last date that she was insured for purposes of her claim, December 31, 2009; (2) had as severe impairments "affective disorder" and "anxiety disorder," citing 20 C.F.R. §§ 404.1520(c), (3) did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Title 20, Chapter III, Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526), and (4) had the RFC to perform the full range of work at all exertional levels with the nonexertional limitations of a Specific Vocational Preparation ("SVP") of level 2 and no more than occasional interaction with the general public. (Tr. 508, 510-11). The ALJ determined that while Ms. Navarro was not capable of performing her past relevant work, she could perform jobs that existed in significant numbers in the national economy. (Tr. 516-17). The ALJ concluded at step five that Ms. Navarro was not disabled at any time from August 1, 2004, the alleged onset date of disability, through December 31, 2009, the date that she was last insured. (Tr. 518).

Ms. Navarro alleges that: (1) the ALJ erred in his determination that her hiatal hernia or other gastrointestinal disorder was not a severe impairment at step two of the five-step evaluation process, (2) the ALJ's assignment of an RFC was not based on substantial evidence because he failed to consider all of her exertional and non-exertional limitations, (3) the ALJ erred by giving no weight to the opinion of a treating physician, Dr. Nevarez, and (4) the ALJ erred by disregarding the opinion of the VE regarding two of the hypotheticals posed to her. (*See* Doc. # 12).

A.      Medically Determinable Impairments

"[A]t step two an ALJ must consider the claimant's impairment or combination of impairments, and determine whether that impairment or combination of impairments significantly limits plaintiff's ability to do basic work activities."  *Elliott v. Astrue*, 507 F. Supp. 2d 1188, 1193 (D. Kan. 2007) (internal quotation marks and citation omitted).  Although the ALJ found at step two that she had the medically determinable severe impairments of affective disorder and anxiety disorder, Ms. Navarro claims that the ALJ did not adequately consider her hiatal hernia or other gastrointestinal disorder.

As the Tenth Circuit Court of Appeals has explained, "once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the step two analysis."  *Parise v. Astrue*, No. 10-3062, 421 F. App'x 786, 787-88 (10th Cir. Nov. 30, 2010) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original).  "Once an ALJ determines that the claimant suffers from one or more medically determinable severe impairments, [s]he moves to the next step in the sequential evaluation process."  *Parise*, 421 F. App'x at 788.  "The ALJ . . . made an explicit finding that [the claimant] suffered from severe impairments. That was all the ALJ was required to do in that regard."  *Id.* (internal quotation marks and citation omitted).

Because the ALJ found that Ms. Navarro had two medically determinable severe impairments, his failure to find that her hiatal hernia or other gastrointestinal disorder were severe impairments at step two is not grounds for reversal if at later steps he considers the combined effect of all the claimant's impairments.  *Parise*, 2009 WL 3764119, at *3 (citing *Hill v. Astrue*, 289 F. App'x 289, 291–92 (10th Cir. 2008) (holding failure to find that additional alleged impairments are also severe is not reversible error so long as the ALJ, in determining plaintiff's RFC, considers the effects of all of the claimant's medically determinable impairments, both

those the ALJ has determined to be severe and those he has determined to be not severe). *See also Tarpley v. Astrue*, No. 5:08–CV–271–FL, 2009 WL 1649774, at *2 (E.D.N.C. June 1, 2009) (finding no reversible error "where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation, provided the ALJ considers that impairment in subsequent steps"). The ALJ adequately considered Ms. Navarro's hiatal hernia or other gastrointestinal disorder in later steps of the sequential evaluation. (Tr. 508-510). The court finds no error on this issue.

B.   RFC Determination

"A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751. "In making the RFC assessment, an ALJ considers how an impairment, and any related symptoms, may cause physical and mental limitations that affect what a claimant can do in a work setting." *Davison v. Colvin*, No. 14-1122, 596 F. App'x 675, 680 (10th Cir. 2014) (citing 20 C.F.R. § 404.1545(a)(1)). The RFC represents "the most [a claimant] can still do despite [his] limitations." *Id.* "The RFC assessment is made based on all the evidence in the record, both medical and non-medical." *Davison*, 596 F. App'x at 680.

The ALJ found that Ms. Navarro had the RFC to perform the full range of work at all exertional levels with the additional nonexertional limitations of an SVP of level 2 and no more than occasional interaction with the general public. (Tr. 508, 510-11). As instructed by the District Court, the ALJ considered the medical evidence that addressed Ms. Navarro's hiatal hernia and gastrointestinal disorder and determined that the weight of the evidence showed that these were not severe impairments and did not present work limitations. (Tr. 506-518). Ms.

Navarro alleges that the ALJ erred in determining that her hiatal hernia and gastrointestinal disorder were not severe impairments and did not present work limitations. She testified that her diarrhea and nausea interfered with her ability to work. (Tr. 37-39; *but see* Tr. 33 (testifying that she stopped working at the jewelry sales position for reasons unrelated to her gastrointestinal disorder). The ALJ discounted Ms. Navarro's description of the severity and disabling effect of her symptoms based on the lack of medical evidence to support the subjective nature of her reported symptoms and discrepancies between her statements and the medical and other evidence. (Tr. 508-510). The court examines the record to determine whether the evidence supports the conclusion that Ms. Navarro's combined impairments are not disabling. *Williams*, 844 F.2d at 756-57.

The record of Ms. Navarro's treatment history for her gastrointestinal condition shows that during and after the relevant time period, her symptoms were controlled. In 2002, Ms. Navarro "underwent open Nissen fundoplication." (Tr. 309). After experiencing recurrent symptoms of gastroesophageal reflux, she had elective surgery on December 10, 2003 "for take-down of her Nissen fundoplication and reconstruction of the gastroesophageal junction with accentuation of the gastroesophageal valve (Hill repair)." (Tr. 309, 310-338). "She was discharged in good condition" and "[p]ostoperatively she made a slow and uneventful recovery." (Tr. 309, 310-331, 354, ).

Ms. Navarro did not complain of any gastrointestinal symptoms until 16 months later, in April of 2005, after she had been drinking wine until 3:30 a.m. (Tr. 288-303, 348, 355-56). In April of 2005, Ms. Navarro had a GI and HIDA scan and was "doing quite well." (Tr. 344, 351). After she reported weight loss, diarrhea, abdominal pain, and reflux symptoms, a panendoscopy performed on May 5, 2005 indicated a normal esophagus and small bowel and no esophagitis.

(Tr. 285, 287). After Ms. Navarro reported "having 2 stools per 24 hours," a colonoscopy performed on July 18, 2005 revealed a polyp, which was removed, and some inflammation which was self-limited and would resolve without treatment. (Tr. 282).

More than two years passed before Ms. Navarro reported any more gastrointestinal symptoms. In August of 2007, she reported bowel problems "on and off for sometime, primarily diarrhea with intermittent bouts of constipation." (Tr. 342). She admitted "she does drink a fair amount of liquor." (Tr. 342). A colonoscopy performed on or about March 24, 2007 showed some inflammation. (Tr. 488). An HIDA scan performed in September of 2007 showed normal results. (Tr. 349-50). A clinic note signed by Dr. Max A. Nevarez, Jr., M.D. on September 15, 2008 indicated that she "has been fairly well stabilized and is doing quite well" and "has no other problem, except that she is developing a fair amount of weight. . . ." (Tr. 340).

Ms. Navarro next sought treatment in July of 2010. On July 2, 2010, after the date that she was last insured, she had an esophagogastroduodenoscopy that revealed a normal duodenum, a normal colon, a polyp, which was removed, esophagitis in the distal third of the esophagus, and a normal esophagus in all other respects. (Tr. 475-81). A barium swallow performed on August 24, 2010 revealed that the majority of the esophagus was normal but "[t]here is frequent, large volume gastroesophageal reflux." (Tr. 483). A gastric emptying study performed on August 27, 2010 showed normal gastric emptying. (Tr. 482).

In a consultation on September 16, 2010, Dr. Reginald C.W. Bell concluded that Ms. Navarro's December 2003 surgery had "worked excellently at controlling her reflux until 6 mos. ago." (Tr. 651, 679). Based on her recurrent symptoms that were not controlled with medication, Ms. Navarro wished to entertain surgical re-intervention and Dr. Bell concluded that "reoperation is indicated." (Tr. 651, 654, 679). A test performed on October 4, 2010 revealed

10

gastric emptying within normal limits. (Tr. 671). She underwent surgery on December 3, 2010. (Tr. 651-58). A test performed on December 4, 2010 revealed no anastomotic leak. (Tr. 670).

Ms. Navarro argues that although the December 2010 surgery occurred after the date she was last insured, it is evidence that her condition "was more severe than she even realized." (*See* Doc. # 12 at 23 of 24). "[T]he relevant analysis is whether the claimant was actually *disabled* prior to the expiration of her insured status." *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348-49 (10th Cir. 1990) (emphasis in original). *See also Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir.1993) (holding that the claimant "must prove she was totally disabled prior to [the date her insured status expired]"). Evidence post-dating the date last insured may be pertinent to the extent that it discloses "the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date." *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 479 (10th Cir. 1993).

The 2010 evidence does not show the severity or continuity of Ms. Navarro's condition; rather, it shows that her reflux condition was well controlled for nine years until she had a recurrence of symptoms after the date she was last insured. *Cf. Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997) ("Additional evidence showing a deterioration in a claimant's condition significantly after the date of the Commissioner's final decision is not a material basis for remand, although it may be grounds for a new application for benefits."). In sum, there is substantial evidence in the record that supports the ALJ's conclusion that Ms. Navarro's impairments related to her hiatal hernia and gastrointestinal disorder were not severe. The record evidence demonstrated that Plaintiff's gastrointestinal symptoms were well-controlled

11

from December 2003 through her December 2009 date last insured, until mid-2010. The record reveals limited treatment for her gastrointestinal symptoms during the time period that she was insured. The ALJ's determination of Ms. Navarro's RFC is supported by substantial evidence, including objective clinical findings and the record as a whole. The court finds no error on this issue.

C.     Weight Assigned to Treating Physician Opinion

Ms. Navarro alleges that the ALJ erred by failing to give controlling weight to Dr. Nevarez's opinion represented in "the check-form Physical Capacities Evaluation." (*See* Doc. # 12 at 29-32 of 34, Tr. 455-56, 516). "A treating physician's opinion must be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1176 (10th Cir. 2014) (internal quotation marks omitted). *See also Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) ("An ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record.") (citations omitted)). The ALJ determines "whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir.2003) (internal quotation marks and citation omitted). Even if the treating source opinion is not given controlling weight, it must be weighed using all of the factors provided in 20 C.F.R. § 404.1527. *Id.*

Dr. Nevarez was one of Ms. Navarro's treating physicians at Colorado Springs Health Partners. (Tr. 340, 342, 344, 347, 355-356, 450-51). On September 21, 2009, Dr. Nevarez

prepared a Physical Capacities Evaluation of her ability to do work-related physical activities. (Tr. 455-56). He set forth rather extreme physical limitations, including sitting no more than two hours in an eight-hour workday, standing/walking no more than one hour in an eight-hour workday, and lifting/carrying no more than nine pounds occasionally. (Tr. 455-56). Dr. Nevarez's evaluation provided no examination findings and did not reference medical signs, symptoms, or findings. The ALJ determined that Dr. Nevarez's opinion was not well-supported by diagnostic techniques and, even if it were, it was not consistent with his treatment notes or other substantial evidence in the record. (Tr. 516).

Dr. Nevarez's opinion was inconsistent with not only his own treatment records, but also the records of other medical providers and Ms. Navarro's own description of her activities. The medical record reveals only sporadic treatment and almost no abnormal results from the alleged onset date of disability, August 1, 2004, through the last date that she was insured for purposes of her claim, December 31, 2009. (Tr. 282, 285, 287-303, 340, 342, 344, 348-50, 351, 355-56, 451, 488). On May 26, 2009, Ms. Navarro reported to Dr. R. Terry Jones, M.D. and Dr. Donald G. Galsco, M.D. that she "cooks, watches TV, does 1 chore a day, helps take care of dogs, drives, has to go out of the house with others, writes in her journal, goes to church, becomes easily distracted, paints, dishes, laundry." (Tr. 413-14, 415-16, 436). She reported that she cleans, reads, decorates, makes dinner, "is able to dress and bathe herself" and continues to love traveling with her husband. (Tr. 413-14, 415-16, 436). She accompanies her husband to do errands or shopping. (Tr. 414). Her past hobbies and interests are hiking, picnicking, traveling and walking" which are somewhat limited because of her panic disorder. (Tr. 414). On May 19, 2010, Ms. Navarro asked the ALJ to reschedule the hearing because she was driving with her husband to Ohio for a week to attend a wedding. (Tr. 58). On October 21, 2010, she

13

reported to Dr. Kenneth Gamblin, M.D. that "she tends to stay up at night playing games on the computer" and that when she takes her medication, she is able to take part in "special activities such as going [to] Rockies Baseball Games." (Tr. 678). Dr. Gamblin "encouraged her to change her life, that she not stay up at night playing games." (Tr. 678). In Dr. Gamblin's opinion, "she would be able to work." (Tr. 678). "Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) (internal quotation marks omitted). *See also Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (ALJ reasonably discounted treating physician opinion which was inconsistent with other medical evidence); *Oldham*, 509 F.3d at 1257 (ALJ reasonably discounted physician opinions in light of other evidence of claimant's capabilities).

The record reflects that the ALJ gave meaningful consideration to Dr. Nevarez's medical opinion and gave good reasons for not giving controlling weight to that opinion. The reasons largely concerned the degree to which the medical opinion was unsupported by objective evidence, the inconsistency between the opinion and the record as a whole, and the extent to which the opinions were based on Ms. Navarro's subjective complaints, all permissible reasons. *See* 20 C.F.R. §§ 404.1527(d)(3) ("[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion") and (d)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). The ALJ gave Dr. Nevarez's opinion no weight because it was not supported by the clinical and laboratory diagnostic outcomes performed himself or by other medical professionals, and inconsistent with other evidence in the record, reasons that are recognized as legitimate. *Pilgrim v. Apfel*, 215 F.3d 1337 (10th Cir. 2000). The court finds no error on this issue.

D.      Opinion of VE

The ALJ relied on the testimony of the VE at the first hearing. (Tr. 44-50, 517-18). "So long as the ALJ's findings about plaintiff's physical and mental limitations were reflected in the hypothetical question propounded to the VE at the first hearing, the ALJ could rely upon the first VE's testimony in determining at step five of the sequential analysis that plaintiff was not disabled." *Garza v. Apfel*, 162 F.3d 1173 (10th Cir. 1998).

"An ALJ poses one or more questions, asking the VE to assume a hypothetical individual with specified limitations that the ALJ may or may not ultimately determine to be applicable to the claimant." *Ruth v. Astrue*, No. 09-7101, 369 F. App'x 929, 931 (10th Cir. March 18, 2010). Ms. Navarro argues that the ALJ "ignore[d]" the VE's testimony regarding two hypothetical questions posed:

> Q Let me give you a second hypothetical. Assume the restrictions in the first hypothetical, with this additional limitation. On an unpredictable basis that may last three or four days at a time, an inability to leave her residence to go to the workplace. Is that going to be tolerated by competitive employment or employers?
> A No
> . . .
> Q All right. With respect to the job of order filler marker, what would be the effect on the hypothetical employee if the hypothetical employee had to take unscheduled breaks between five and eight a day that would keep the employee off-task for 15 to 30 minutes?
> A Then they would not be employable and could not perform competitively employment. In terms, and an employer would not tolerate that.
> Q So if I ask the same question for the job as a router, would you give the same answer?
> A Yes

(*See* Doc. # 33 of 34, Tr. 48, 50). These two hypothetical questions posed to the VE included limitations that the ALJ did not find supported by the record evidence, that is, that the individual would be unable to leave her home for three to four days at a time or would require unscheduled breaks between five and eight times daily that would keep her off-task for 15 to 30 minutes at a

15

time. (Tr. 48, 50). "An ALJ is not bound by VE testimony in response to a hypothetical that fails to set forth only those impairments the ALJ has accepted as true." *Ruth*, 369 F. App'x at 931 (citation omitted). *See also Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990) (ALJ is not bound by VE's opinion in response to a hypothetical question which includes limitations that are not accepted as true by the ALJ). "By posing a particular hypothetical, an ALJ does not confine herself to making an RFC determination mirroring the hypothetical limitations." *Ruth*, 369 F. App'x at 931. The court finds no error on this issue.

IV.     Conclusion

The Commissioner's determination that Ms. Navarro is not disabled is "clearly and affirmatively linked . . . to substantial record evidence. . . ." *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (citation omitted). The Tenth Circuit's "precedents do not require more" and the "limited scope of review precludes [this court] from reweighing the evidence or substituting [its] judgment for that of the" Commissioner. *Id.* (internal quotation marks and citation omitted). The court is satisfied that the ALJ considered all relevant facts and that the record contains substantial evidence from which the Commissioner could properly conclude that Ms. Navarro was not disabled within the meaning of Title II of the Social Security Act.

Accordingly, IT IS ORDERED that the Commissioner's final decision is AFFIRMED and this civil action is DISMISSED, with each party to bear her own attorney fees and costs.

DATED at Denver, Colorado, this 10th day of February, 2016.

BY THE COURT:

   s/Craig B. Shaffer
United States Magistrate Judge